A05A0389. MONROE v. THE STATE.
(614 SE2d 172)

SMITH, Presiding Judge.

Following a jury trial, Johnny Monroe was convicted of aggravated assault. His motion for new trial was denied, and he appeals, challenging the sufficiency of the evidence and the admission of certain evidence. We find no error, and we affirm.

1. We first address Monroe's contention that the evidence was insufficient to convict him of aggravated assault. Construed in favor of the verdict, the State presented evidence that the victim, an officer employed by the Brunswick Police Department, stopped the car Monroe was driving after noticing that car's headlights were off. The traffic stop occurred at approximately 5:25 p.m. on December 3, 2000, and the victim testified that "it was becoming darker and I felt concerned for the safety of the other vehicles and the citizens on the road." The victim approached Monroe and asked for his driver's license and proof of insurance. Monroe replied that he did not have his

license with him and did not know where the proof of insurance was located. Monroe told the victim that the car belonged to his girlfriend, but he could not remember his girlfriend's last name. In addition, when asked to state his date of birth, Monroe "stammered and stuttered" and was unsure of the year in which he was born. Monroe told the victim that his name was "James Jenkins." The victim provided that name, along with the car's license tag information to a dispatcher, in an effort to determine the name of the registered owner of the vehicle.

At some point during the stop, another City of Brunswick police officer, Allen Carter, arrived at the scene to serve as backup. As a result of information the officers received from the dispatcher, they decided to arrest Monroe. The victim instructed Monroe to exit the car. Monroe did so but then "burst through" the victim and Officer Carter in an attempt to flee. A struggle among the three men ensued, with all three rolling down an embankment. Carter testified that during the struggle, Monroe attempted to remove Carter's pistol from its holster. Carter managed to spray Monroe twice with pepper spray. Carter testified that after the second spray, "Mr. Monroe was down on the ground . . . covering his eyes and he had something in his hands. Instantaneously, he hit [the victim] with a brick, what . . . appeared to be a brick." The victim testified that he tackled Monroe "around the ankles and the next thing I know, I'm getting hit in the head two or three times." Monroe was eventually subdued and taken into custody. The victim's head injuries required five stitches.

Monroe argues that the evidence was insufficient to convict him because of inconsistencies in Carter's testimony. But

> [o]n appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.

(Citations, punctuation and footnotes omitted.) *Horton v. State*, 269 Ga. App. 407-408 (604 SE2d 273) (2004). Even assuming without deciding that Carter's testimony was inconsistent, it was for the jury, and not this court, to resolve any such inconsistencies. Id. The jury was authorized under the standard of *Jackson v. Virginia*, 443 U. S.

307 (99 SC 2781, 61 LE2d 560) (1979), to convict Monroe of aggravated assault, and the trial court did not err in denying his motion for new trial.

2. Monroe argues that the trial court erroneously denied his motion to exclude the State's photographic evidence, on the ground that the State did not previously furnish him with a copy of the photographs. Under OCGA § 17-16-4 (a) (3), a prosecutor is required to " 'permit the defendant . . . to inspect and copy or photograph' certain items including photographs which are within the possession, custody, or control of the State or prosecution." *McSears v. State*, 226 Ga. App. 90, 91 (1) (485 SE2d 589) (1997). The statute's plain language, however, "does not require the State to take the initiative and 'furnish' the defense with copies of photographs. [Cit.]" Id. The record contains a certificate of service of discovery, filed by the prosecutor and dated August 29, 2001, stating that if Monroe elected to have OCGA § 17-16-1 apply, then the investigative file of the District Attorney's office was available for Monroe's attorney to review and that any material referred to in OCGA § 17-16-4 (a) (3) or (a) (4) was available for review. One of the police reports appearing in the record shows that photographs of the scene were taken by one of the attending officers.

Monroe does not argue that he asked to see the photographs and that this request was refused by the State. Instead, he appears to contend that the State did not specifically inform him that the photographs were in existence. As best we can understand his contentions, Monroe argues that because the police report did not specifically state that the officer's film had been developed into photographs, the photographs were not admissible. He maintains that "there must be adequate notice to a defendant of the existence of . . . photographs. A passing reference to such photographs, buried in the narrative reports of police officers, is inadequate notice." Monroe's counsel conceded at trial that "[t]here is a mention that photographs were taken and that there were some rolls of film that were logged into evidence." He added, however, that there was "no indication in the response of the District Attorney's office to the Public Defender's request that they ever got the photographs developed or that they would be available for inspection."

We find no basis for reversal. The State complied with the mandate of OCGA § 17-16-4, allowing Monroe to review and copy relevant portions of its file, and Monroe has made no showing whatsoever that the State acted in bad faith. See *Felder v. State*, 270 Ga. 641, 645 (6) (514 SE2d 416) (1999). Monroe's counsel was aware that photographs had been taken and that film had been placed into evidence. Monroe therefore was placed on notice of the very distinct possibility that photographs were a part of the State's file as well. It

appears, however, that Monroe's counsel chose not to review the file. Monroe has not shown that the evidence was "wrongfully withheld," *Baker v. State*, 238 Ga. App. 285, 287 (518 SE2d 455) (1999), and he has no basis for complaint.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED APRIL 19, 2005.

*Patrick C. Kaufman*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Leslie K. DeVooght, Assistant District Attorneys*, for appellee.