**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 1, 2016**

# In the Court of Appeals of Georgia

A16A1150. GAINES v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Markese Gaines guilty of child molestation. The trial court denied Gaines's motion for new trial, and he appeals, arguing that: the evidence was insufficient to sustain his conviction; the trial court erred in denying his motions for mistrial and to supplement the record; the State improperly commented on his exercise of the right to remain silent; and he received ineffective assistance of counsel at trial. Finding no basis for reversal, we affirm.

On appeal from a criminal conviction, "the evidence must be viewed in the light most favorable to the verdict, and the [defendant] no longer enjoys a

presumption of innocence."[1] We do not weigh the evidence or assess witness credibility, but merely determine "whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[2] Accordingly, we will uphold the jury's verdict "as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[3]

Viewed in this manner, the evidence shows that 15-year-old V. W. met Gaines at her school, where Gaines, who was 20 years old at the time, catered lunches. Although she had minimal contact with him at the school, she would say "Hi" to him and thank him for lunch. One day after school, V. W. saw Gaines at a nearby Burger King restaurant. They talked, "exchanged numbers," and V. W. left. Sometime later, V. W. again saw Gaines at the Burger King after school. Gaines sat down with her, and they talked for a period of time. They then walked to Gaines's house to "hang out."

---

[1] *Sowell v. State*, 327 Ga. App. 532, 534 (759 SE2d 602) (2014) (footnote omitted).

[2] Id. (punctuation and footnote omitted).

[3] Id. (punctuation and footnote omitted).

As they entered the home, V. W. saw several people in the living room. She walked to a back bedroom, where she began doing homework. Gaines came into the room, started kissing her, and the situation became "very uncomfortable." V. W. tried to move away from Gaines, but he pushed her onto the bed and placed his weight on her. While pinning her down, Gaines removed V. W.'s clothing, put on a condom, and had intercourse with her. V. W. testified that she tried to fight him off, but was unable to stop him.

Gaines left the room after the incident, and V. W. saw the condom that he had used on the bed. She quickly dressed, grabbed the condom, and exited the house without saying anything to the people in the living room. When V. W. arrived home, her mother noticed that she appeared lethargic, scared, and not "her normal self." The mother also found a used condom in V. W.'s lunch bag. The mother called the police and gave the condom to the responding officers. She then took V. W. to the hospital, where a nurse performed a rape examination.

During the examination, V. W. told the nurse that she had "met a boy, went to his house, and then he forced himself" on her. V. W. further reported that her attacker had bitten her right nipple. Forensic analysis of swabs taken from V. W.'s right nipple

revealed the presence of DNA matching that of Gaines. DNA matching both V. W. and Gaines was also identified on the condom that V. W. had brought home.

Gaines was indicted for statutory rape and child molestation "by kissing [V. W.] on her breast or by having sexual intercourse with" her. The jury found Gaines not guilty of statutory rape, but guilty of child molestation. Gaines moved for a new trial, which the trial court denied after a hearing. This appeal followed.

1. Gaines argues that the evidence was insufficient to support the jury's verdict as to child molestation. We disagree. V. W.'s testimony, her statements to the nurse who examined her, and the DNA evidence supported the verdict.[4] The fact that the jury found Gaines not guilty of statutory rape "has no bearing on the sufficiency of

---

[4] OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."); *Powell v. State*, 335 Ga. App. 565, 567 (1) (782 SE2d 468) (2016) ("The victim's testimony alone is sufficient to sustain a [child molestation] conviction.") (citations omitted); *Sowell*, supra at 535 (1) ("[T]he State presented sufficient evidence of [aggravated child molestation] when the hospital nurse testified that [the victim] told her that [the defendant] licked her 'tootie,' which was the child's term for her vagina.") (footnote omitted).

the evidence supporting the guilty verdict on the separate offense of child molestation."[5]

2. Gaines contends that the trial court erred in failing to declare a mistrial during the state's opening statement. In particular, he claims that the state improperly injected his character into evidence and suggested that he was guilty by association when the prosecutor made the following remark:

> [V. W.], fearing that no one will believe her if she reports what happened, she realizes now she put herself in a dangerous position because she is naive, she is the child, he is the adult, she thinks to take the condom . . . and quickly goes out the front door. She doesn't say anything to anybody. Remember those are his people. She doesn't know what they're going to do to her if she reports this. She figures correctly that they will be on his side. She doesn't know if they're dangerous. She doesn't know anything about it. *And by the way, one of those people in*

---

[5] *O'Rourke v. State*, 327 Ga. App. 628, 631 (1) (760 SE2d 636) (2014). See also *Rogers v. State*, 291 Ga. App. 202, 203 (661 SE2d 615) (2008) ("A conviction on one count and acquittal on another related count may reflect a compromise or lenity by the jury rather than inconsistent factual conclusions, and Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts."); *Wyley v. State*, 259 Ga. App. 348 (1) (577 SE2d 32) (2003) ("[T]he jury's not guilty verdicts on some offenses have no bearing whatsoever on the sufficiency of the evidence supporting the guilty verdicts on other offenses.").

*the room was later convicted of murder*. So perhaps young [V. W.] was at least that smart.[6]

Gaines objected and moved for a mistrial, arguing that the state had impugned his character by asserting that a "murderer" was in his home. The trial court denied the motion, but instructed jurors after the prosecutor completed her opening statement that "what the lawyers say . . . in their opening statements, their closing arguments, or their questions they ask . . . is not evidence and should not be taken by you as evidence."

"It is well settled that where a defendant objects and moves for mistrial . . . and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion."[7] Gaines did not

---

[6] (Emphasis supplied).

[7] *Cook v. State*, 276 Ga. App. 803, 806 (3) (625 SE2d 83) (2005) (citation and punctuation omitted). See also *Smith v. State*, 261 Ga. 512 (2) (407 SE2d 732) (1991) (defendant "waived his right to appellate review [of claim that State's opening statement deprived him of a fair trial] by failing to make a motion for a mistrial or to renew his objection after the court gave curative instructions") (citation omitted); *Allen v. State*, 224 Ga. App. 324, 325 (2) (480 SE2d 328) (1997) (defendant waived claim of error regarding State's allegedly improper opening statement "by failing to renew the objection following the denial of his motion for mistrial and the administration of curative instructions") (citation omitted).

object to the trial court's curative instruction or renew his motion for mistrial at that point. This claim of error, therefore, has been waived.[8]

Moreover, even without waiver, we find no error. "Whether to declare a mistrial is a question committed to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that a mistrial was essential to preserve the defendant's right to a fair trial."[9] In exercising its discretion, the trial court may determine that curative instructions – rather than a mistrial – are an appropriate response to a prosecutor's allegedly prejudicial opening statement.[10]

The trial court properly exercised its discretion in determining that a curative instruction was adequate here. Although the prosecutor referenced a "murderer" in the house, she did not connect that reference to Gaines's character or assert that Gaines was guilty by association with this individual. On the contrary, the prosecutor

---

[8] See *Smith*, supra; *Cook*, supra; *Allen*, supra.

[9] *McKibbins v. State*, 293 Ga. 843, 848 (3) (750 SE2d 314) (2013) (citation and punctuation omitted).

[10] See OCGA § 17-8-75 (outlining trial court's duty "[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence"); *Sanders v. State*, 290 Ga. 445, 448 (3) (721 SE2d 834) (2012) ("The trial court has the discretion to decide whether a mistrial is the only corrective measure to take or whether proper instructions withdrawing the testimony from the jury's consideration can correct the prejudicial effect.") (citation omitted).

7

used the presence of this person to explain why V. W. left Gaines's home without reporting the assault to other occupants.[11] Given these circumstances, as well as the trial court's admonition to jurors that statements by counsel do not constitute evidence, a mistrial was not necessary to preserve Gaines's right to a fair trial.[12]

3. In a related claim of error, Gaines argues that the trial court erred in refusing to include in the record on appeal evidence that the alleged "murderer" in Gaines's home had not, in fact, been convicted of murder. Again, we disagree.

Following the hearing on his motion for new trial, Gaines moved to supplement the record with evidence regarding the alleged murderer's criminal record. According to the motion, Gaines's attorney discovered after the new trial hearing that the

---

[11] Compare *Cobb v. State*, 209 Ga. App. 708, 711 (9) (434 SE2d 513) (1993) (reversing conviction where State introduced substantial irrelevant, prejudicial evidence at trial "by which the State attempted to show that sexual crimes were a frequent occurrence in appellant's family, thus to prove appellant's guilt by association") (physical precedent only); *Freeman v. State*, 142 Ga. App. 293, 294 (4) (235 SE2d 560) (1977) ("'Guilt by association' is not a crime.").

[12] See *Sanders*, supra (mistrial not required where trial court took sufficient precautions to exclude allegedly improper comments during opening statement "from the jury's consideration as evidence"); *Mulkey v. State*, 237 Ga. App. 880, 881 (517 SE2d 362) (1999) (trial court properly denied motion for mistrial following prosecutor's comment during opening statement that defendant had been on probation; although comment incidentally placed defendant's character in issue, it was relevant to motive).

individual had pled guilty to two felonies, but that the murder charge originally filed against him had been nolle prossed. Gaines sought to prove the individual's criminal status by including in the record a certified copy of his conviction. The trial court denied the motion.

Pretermitting whether such post-trial evidence could have properly been added to the appellate record,[13] its absence does not require reversal. The prosecutor admitted at the new trial hearing that she was mistaken at trial and that the individual had not been convicted of murder. The record thus establishes that the individual did not have a murder conviction.[14] Additional evidence of this fact was unnecessary for purposes of appeal. The trial court, therefore, properly denied the motion to supplement.[15]

---

[13] See *Harp v. State*, 204 Ga. App. 527 (1) (420 SE2d 6) (1992) ("Evidence never actually admitted at trial cannot properly become part of the record on appeal pursuant to OCGA § 5-6-41 (f).") (citation and punctuation omitted).

[14] See *Gadson v. State*, 197 Ga. App. 315, 317 (4) (398 SE2d 409) (1990) (indicating that prosecutor may make an admission in judicio during a post-trial hearing).

[15] See OCGA § 5-6-41 (f) (trial court may supplement the record on appeal where "anything material to either party is omitted from the record . . . or is misstated therein"); *Michel v. Michel*, 286 Ga. 892, 895 (2) (692 SE2d 381) (2010) ("[T]he discretion granted the trial court by OCGA § 5-6-41 (f) vests it with a necessary control over the designation and transmittal of both record and transcript. The court's

4. In two claims of error, Gaines complains about the following statement in the prosecutor's closing argument: "There was his DNA on her nipple where he bit her on the nipple. Have we heard his explanation for that? No. Because he doesn't have one. Because there isn't one except that he had sex with her."

(a) Gaines argues that he was denied a fair trial because this portion of the state's argument improperly commented on his right to remain silent and his decision not to testify. As an initial matter, the record shows that Gaines did not object to the cited comment. He has thus waived this claim of error.[16]

---

decision in such matters will not be reversed absent a manifest abuse of discretion.") (citation and punctuation omitted); *Carr v. State*, 267 Ga. 547, 551 (2) (480 SE2d 583) (1997) (trial court did not abuse it discretion in concluding, pursuant to OCGA § 5-6-41 (f), that nothing material was omitted from trial record); *Washburn v. Sardi's Restaurants*, 191 Ga. App. 307, 311 (7) (381 SE2d 750) (1989) (trial court did not abuse its discretion in denying appellant's motion to supplement the record, particularly where "[i]t cannot be said that anything material to the appellant has been omitted from the record on appeal") (citation and punctuation omitted).

[16] *Norman v. State*, 298 Ga. 344, 347 (3) (781 SE2d 784) (2016) ("In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal.") (citation and punctuation omitted); *Palmer v. State*, 286 Ga. App. 751, 755 (4) (650 SE2d 255) (2007) (defendant waived claim that prosecutor improperly commented on his failure to testify by not objecting to prosecutor's closing argument).

Furthermore, in determining whether a prosecutor improperly referenced the decision to remain silent, we evaluate "whether the prosecutor's manifest intention was to comment on the accused's failure to testify or whether the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify."[17] As we have explained, "[a] mere comment on the accused's failure to rebut the [s]tate's evidence is not impermissible."[18] Ultimately, closing arguments must be "judged in the context in which they are made."[19]

The record shows that shortly before the prosecutor made the comment at issue, defense counsel asserted in his closing argument that the evidence did not support V. W.'s testimony that Gaines had assaulted her. Focusing on the DNA found on the condom, defense counsel argued that such evidence established only that "both of

---

[17] *Williams v. State*, 317 Ga. App. 248, 254 (2) (730 SE2d 726) (2012) (citation omitted).

[18] *Culbertson v. State*, 193 Ga. App. 9, 11 (5) (386 SE2d 894) (1989) (citations omitted). See also *Culbreath v. State*, 328 Ga. App. 153, 159 (3) (761 SE2d 557) (2014) (prosecutor may comment "on the general failure of the defense to produce evidence"); *Brown v. State*, 267 Ga. App. 642, 647 (2) (600 SE2d 731) (2004) ("[T]he State may note in closing argument the defense's failure to present any evidence to rebut the proof adduced by the State. It is reference to the failure of the defendant himself to testify which is prohibited.") (punctuation and footnote omitted).

[19] *Williams*, supra at 253 (2) (citation and punctuation omitted).

them had contact with that condom, or a little piece of it." According to defense counsel, the DNA on the condom was "not enough" to prove that sexual intercourse had occurred.

In response, the prosecutor stated that defense counsel had "to get up here and say something, the most ridiculous stuff." Urging the jury not to "disregard the actual scientific evidence," she asserted that there was "conclusive scientific evidence of [Gaines's] sperm, his semen" on the condom, proving that "[h]e had sex with her." She then turned to the DNA identified on V. W.'s breast, asserting that the jury had not "heard [Gaines's] explanation for" that DNA because "he doesn't have one."

Viewing the state's argument in context, we find that the prosecutor did not comment upon Gaines's failure to testify. She merely suggested that Gaines had not rebutted the DNA evidence on V. W.'s breast, as opposed to the DNA on the condom, which defense counsel had tried to explain in his closing argument. This claim of error, therefore, presents no basis for reversal.[20]

---

[20] See *Andrews v. State*, 331 Ga. App. 353, 356 (3) (771 SE2d 59) (2015) (prosecutor permissibly commented on defendant's failure to rebut evidence by stating: "[T]he only other person who knows is the Defendant and he hasn't admitted to anything. You heard his denial that any of this ever happened. What you've also heard is a whole lot of evidence that is absolutely unrefuted."); *Kirkland v. State*, 315 Ga. App. 143, 148 (5) (726 SE2d 644) (2012) (given context of closing argument, prosecutor did not comment on defendants' silence by asserting, while discussing the

12

(b) Gaines claims that trial counsel rendered ineffective assistance by failing to object to the prosecutor's alleged reference to his decision to remain silent. To prevail on this claim, Gaines "must show both that his trial counsel's performance was deficient and that the deficient performance so prejudiced him as to deprive him of a fair trial."[21]

Gaines cannot make the necessary showing. As discussed in Division 4 (a), the prosecutor's closing statement did *not* comment on his exercise of the right to remain silent. Rather, the prosecutor permissibly suggested that the state's DNA evidence had not been rebutted. Accordingly, because any objection to this argument would

---

defendants' interview with police, that "if the defendants were truly innocent men facing time on charges as serious as these ones, don't you think they would've wanted . . . to prove to the investigating officer that they did not do this"); *Williams v. State*, 285 Ga. App. 190, 195-196 (3) (c) (645 SE2d 676) (2007) (state's argument that defendant never identified individual he claimed committed the crime did not improperly shift burden of proof to the defendant); *Culbertson*, supra (prosecutor permissibly commented in closing argument that "[t]here has been no explanation really offered as to why it was done other than to harm the officers").

[21] *Walker v. State*, 280 Ga. App. 457, 462 (6) (634 SE2d 93) (2006) (citation omitted).

have been futile, counsel's failure to object does not constitute ineffective assistance.[22]

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[22] See id. at 463 (6) (b) (trial counsel's failure to raise a meritless objection to the State's closing argument "provides no basis for a claim of ineffective assistance of counsel") (citation and punctuation omitted).

14