**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 23, 2019**

# In the Court of Appeals of Georgia

A19A1091. POWELL v. THE STATE.

REESE, Judge.

A DeKalb County jury found Darien Powell guilty of armed robbery.[1] He was sentenced to serve a total of twenty years, with the first ten years in confinement, and the remainder to be served on probation. Following a denial of his motion for new trial, he files this appeal, arguing that there was insufficient evidence to support his conviction, and that the indictment contained a fatal defect. He also contends that the trial court erred by: admitting evidence of a surveillance video; failing to grant a mistrial based on the surveillance video; failing to instruct the jury on the lesser included charge of robbery; and commenting on the evidence. For the reasons that follow infra, we affirm.

---

[1] See OCGA § 16-8-41 (a).

Viewed in the light most favorable to the jury's verdict,[2] the record shows that, on the evening of September 29, 2014, B. S. worked as a manager for Inserection, a store that sold, among other items, smoke paraphernalia. Around 9:00 p.m., while B. S. counted money on a store countertop, a man, whom he later identified as the Appellant, entered the store. According to B. S., the Appellant wanted to look at a water pipe. B. S. asked the Appellant for identification and observed that he was at least 18 years old. After the Appellant presented a state identification card, B. S. spent about 15 minutes showing him some pipes, which were located behind B. S. According to B. S., the Appellant told him that "he would be right back[, because he] wanted to get his money out of the car." When the Appellant returned, B. S. was still counting money. B. S. testified that the Appellant asked to "look at the items again," and chose a pipe to purchase. B. S. told another store employee to "ring [the Appellant] up," as B. S. turned his head away from the counter to return a pipe that the Appellant did not want to purchase. B. S. testified that the Appellant then "snatched [the] money off the countertop[,]" and as B. S. turned back around, the man "had [a] gun pointed directly in [B. S.'s] face," then the Appellant ran out of the store.

---

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2

E. M. testified that she was also working at Inserection the evening of September 29, 2014. She testified that she and B. S. were standing behind the store counter when the robber, whom she later identified as the Appellant, initially entered the store. E. M. saw B. S. show the Appellant some pipes, and heard the Appellant state that he "would have to step outside and get some money to purchase the [pipe]." She further testified that the Appellant returned to the store with a gun, pointed the gun at her, and told her to "get down[.]" The Appellant then pointed the gun at B. S. who "froze up[,]" and took the money from the countertop.

After a jury found him guilty of armed robbery, the Appellant filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

On appeal from a criminal conviction, the appellate court

view[s] the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. [The reviewing court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[3] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to

---

[3] 443 U. S. at 319 (III) (B).

3

make out the State's case, [the reviewing court] must uphold the jury's verdict.[4]

"The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes charged."[5] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the evidence was insufficient for a rational trier of fact to find him guilty of armed robbery because the gun "was not used to effectuate the taking [of the money] in this case[,]" citing to *Hicks v. State*[6] as authority. Specifically, the Appellant contends that the robber took the money from the countertop while B. S.'s back was turned and before B. S. saw the gun.

An individual commits armed robbery "when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another

---

[4] *Rankin*, 278 Ga. at 704.

[5] *Donnell v. State*, 285 Ga. App. 135 (1) (645 SE2d 614) (2007).

[6] 232 Ga. 393 (207 SE2d 30) (1974).

4

by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[7]

We find *Hicks* distinguishable from the instant action. In *Hicks*, the Supreme Court of Georgia ruled that the defendant did not commit armed robbery when he took the victim's wallet while she slept because the offensive weapon was not used to commit that particular crime, even though it was later used in subsequent crimes.[8] In contrast, E. M. testified that B. S. froze when the Appellant pointed a gun at B. S. and then took the money. Further, both B. S. and E. M. identified the Appellant as the robber.[9] "[A] jury is authorized to believe or disbelieve all or any part of the

---

[7] OCGA § 16-8-41 (a).

[8] *Hicks*, 232 Ga. at 403; cf. *Weldon v. State*, 279 Ga. 185, 186 (611 SE2d 36) (2005) (armed robbery established where the defendant threatened the victim with a firearm, carried by a co-defendant, during a robbery); *Francis v. State*, 266 Ga. 69, 70 (1) (463 SE2d 859) (1995) (theft occurred where evidence showed that the theft was completed after the defendant employed force against the victim).

[9] See *Banks v. State*, 269 Ga. App. 653, 654 (1) (605 SE2d 47) (2004) (victim's in-court identification of the defendant as the gunman was sufficient, under *Jackson v. Virginia,* to authorize the jury's guilty verdict); *Lane v. State*, 255 Ga. App. 274, 276 (564 SE2d 857) (2002)

testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it."[10]

As explained fully in Division 2, supra, the evidence supports a finding that the Appellant took the money from B. S.'s immediate presence by using a weapon. We conclude that the evidence presented was sufficient for a rational trier of fact to find the Appellant guilty of the armed robbery beyond a reasonable doubt.[11]

2. The Appellant argues that a fatal variance[12] existed as to the averments in the indictment and the evidence at trial. Specifically, the Appellant contends that the evidence showed the perpetrator took the money from the store's countertop and not from "the person of [B. S.,]" as alleged in the indictment.

---

[10] *Patterson v. State*, 346 Ga. App. 530, 534 (2) (816 SE2d 461) (2018) (punctuation and footnote omitted).

[11] See *Mathis v. State*, 328 Ga. App. 292, 299 (2) (e) (761 SE2d 836) (2014) (affirmed armed robbery conviction because the evidence was sufficient for a jury to find beyond a reasonable doubt that "the perpetrators used offensive weapons either before or contemporaneous with the taking of [the victim's] property[.]") (punctuation and footnote omitted).

[12] See *Lebis v. State*, 302 Ga. 750, 759 (II) (B) (808 SE2d 724) (2017) (A fatal variance exists when: "(1) the allegations fail to definitely inform the accused as to the charges against him so as to enable him to present his defense and not be taken by surprise, and (2) the allegations are not adequate to protect the accused against another prosecution for the same offense.") (citation omitted).

OCGA § 16-8-41 (a) states, in pertinent part, that armed robbery is committed by the taking of "property of another from the person or the immediate presence of another. . . ." The Supreme Court of Georgia has interpreted "immediate presence of another" to mean,

> not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection that will suffice. Within this doctrine, the person may be deemed to protect all things belonging to the individual, within a distance, not easily defined, over which the influence of the personal presence extends. In cases of this type, all of the victim's property is, in contemplation of law, upon the person of the owner, which is, at the time of taking, in the immediate presence of the owner, or is so near at hand, or stored in such position, that, at the time of taking, it is under the immediate personal protection of the owner. If the goods are in that condition, then they are, within the contemplation of the law, upon the person of the owner.[13]

Here, the evidence showed that the money taken from the store was on the countertop, in the "immediate presence" and in the "immediate personal protection" of the store

---

[13] *Felder v. State*, 270 Ga. 641, 643 (2) (514 SE2d 416) (1999) (defendant properly indicted for armed robbery since "the victim's person includes the entire area within his immediate presence[ ]").

7

manager.[14] Thus, there was no fatal variance between the indictment and the evidence presented.[15]

3. The Appellant argues that the trial court erred in permitting the State to introduce evidence of a purported surveillance video and in failing to grant a mistrial. For the reasons that follow, we disagree.

The record shows that during trial, an officer who worked for the City of Clarkston Police Department ("Department") was called to the scene to investigate the armed robbery. He testified that he reviewed video footage of the robbery that had been captured by a surveillance camera in the store. Defense counsel raised a "best evidence" objection to the testimony. The State responded that the video "evidence [had been] lost." The trial court overruled the objection, and the officer testified that because he had been unable to obtain a copy of the surveillance video from the store, so he recorded "a video of [the] video[,]" using his Department-issued cell phone, and that he then downloaded the video onto the Department's system. The officer testified

---

[14] See Felder, 270 Ga. at 643 (2) (trial court correctly denied the defendant's motion for a directed verdict of acquittal on the armed robbery charge because the evidence at trial was sufficient to show that the property was taken from the immediate presence of the victim, as alleged).

[15] See *Lebis*, 302 Ga. at 759 (II) (B).

that when he left the Department he had returned the cell phone to the Department.[16] The officer, however, identified the Appellant as the robber he had seen in the video.

Trial counsel objected again, and the trial court removed the jury from the courtroom and conducted a hearing on the objection. During the hearing, defense counsel requested a mistrial or "at the very least, . . . a curative instruction . . . to disregard [the] testimony that [the officer] saw [the Appellant] on the video." The State responded that the officer's identification of the Appellant based on the video was unintentional and was not in response to a question. The State agreed that a curative instruction would be appropriate. The trial court ruled that it would give a curative instruction for the jury to "disregard [the officer's] identification of the [Appellant] in any video footage [and] that the law requires that the jury decide identification, . . . not the witness[,]" and denied the Appellant's motion for a mistrial. The Appellant did not object to the trial court's ruling or renew his motion for a mistrial.

"It is well settled that where a defendant objects and moves for mistrial and the trial court denies the motion but takes some corrective action, if the defendant is

_____

[16] The property custodian for the Department testified that he was unable to locate the video.

9

dissatisfied with that action, he must renew the objection or motion."[17] Here, the Appellant failed to do either and thus has waived appellate review of this matter.[18]

4. The Appellant contends that the trial court erred in failing to instruct the jury on the lesser included charge of robbery. Specifically, the Appellant contends that the robbery was complete before he pointed the gun at B. S. and that a jury instruction on robbery was required because it was his sole defense.

OCGA § 17-8-58 states:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

---

[17] *Gaines v. State*, 339 Ga. App. 527, 529 (2) (792 SE2d 466) (2016) (punctuation and footnote omitted).

[18] See id. at 529 (2); see also *Samuels v. State*, 335 Ga. App. 819, 825 (2) (783 SE2d 344) (2016).

To demonstrate plain error, the Appellant must show that "the failure to give the instruction was erroneous, the error was obvious, the lack of the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."[19]

Prior to the charge conference, the Appellant submitted written, proposed jury charges, including a request to charge the jury on the offense of robbery by intimidation. During the charge conference, defense counsel orally requested "a lesser included offense charge [of robbery.]" The trial court ruled, citing to *Hill v. State*[20] as authority, that it was not appropriate to give the robbery by intimidation jury instruction because the identity of the perpetrator was at issue and "if [the jury does not] believe a gun was involved, and they are instructed that they have to find [that] each and every element occurred, then they don't have a choice. They have to find [the Appellant] not guilty."[21] The trial court also found that there was no evidence to

---

[19] *Styles v. State*, 329 Ga. App. 143, 149 (2) (764 SE2d 166) (2014) (punctuation and footnote omitted).

[20] 228 Ga. App. 362 (492 SE2d 5) (1997).

[21] See id. at 363 (1) ("Although robbery by intimidation is a lesser included offense of armed robbery, it is not error in an armed robbery case to fail to charge on robbery by intimidation where there is evidence of robbery by use of an offensive weapon, but no evidence of robbery by intimidation.") (citation omitted).

11

support a robbery by intimidation jury charge. Defense counsel did not object either to the trial court's ruling or to the jury charge as given.

The Appellant has failed to show plain error. As explained in Division 1, supra, the State presented sufficient evidence to support an armed robbery conviction. Both victims identified the Appellant as the robber that pointed a gun at B. S., and E. M. testified that the Appellant pointed a gun at B. S. and then took the money. Further, the Appellant failed to argue during the charge conference that robbery as a lesser included was his sole defense.[22] Even if robbery was the Appellant's sole defense, the trial court did not err in failing to give the robbery instruction because the Appellant

---

[22] See *Jackson v. State*, 252 Ga. App. 16, 16-17 (2) (555 SE2d 240) (2001) ("Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.") (citation omitted).

denied that he was the robber.[23] Thus, "the trial court's failure to charge on robbery

. . . was not error because the evidence did not *demand* a charge on that offense."[24]

5. The Appellant argues that the trial court erred by commenting on the evidence in violation of OCGA § 17-8-57. Specifically, the Appellant contends that the trial court's comments "on the facts presented to the jury[ ]" constituted harmful error. This argument is without merit.

Under OCGA § 17-8-57 (a) (1), "[i]t is error for any judge, during any phase of any criminal case, to express or intimate *to the jury* the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused."[25]

The record shows that the comments referenced in the Appellant's brief that were made by the trial court judge during the charge conference, outside the presence

---

[23] See *Palmer v. State*, 330 Ga. App. 679, 681 (1) (769 SE2d 107) (2015) (affirmed the trial court did not err in failing to give a jury instruction on the defendant's sole defense of justification because the defendant denied committing the crime).

[24] *Styles*, 329 Ga. App. at 150 (2) (a) (punctuation and footnote omitted; emphasis in original); see *Gunter v. State*, 316 Ga. App. 485, 487 (2) (729 SE2d 597) (2012) ("[A]bsent a *written* request to charge, the failure to instruct the jury on a lesser included offense is not error.") (citations and punctuation omitted; emphasis supplied).

[25] (Emphasis supplied.)

of the jury. Thus, the Appellant's argument that the trial court violated OCGA § 17-8-57 is belied by the record.

Based on the foregoing, the trial court did not err in denying the Appellant's motion for new trial.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*